**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| LOUIS MITCHELL, SR., | ) | No. ED CV 09-1258-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 20, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on August 21, 2009, and August 27, 2009.  Pursuant to the Court's order, the parties filed a Joint Stipulation on January 6, 2010, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on June 6, 1951. [Administrative Record ("AR") at 54, 648.] He has completed two years of college, and has past relevant work experience as a janitor, laborer, and pool installer. [AR at 103, 108, 115-18.]

Plaintiff filed his application for Disability Insurance Benefits on December 3, 2001,[1] alleging that he has been unable to work since September 17, 2001, due to hepatitis C and problems with his legs, back, and liver. [AR at 92-94, 101-14.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 74-84.] A hearing was held on March 10, 2003, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert and a vocational expert also testified. [AR at 26-53.] On April 14, 2003, the ALJ issued an unfavorable decision. [AR at 9-20.] On May 29, 2003, the Appeals Council denied plaintiff's request for review of the hearing decision. [AR at 4-7.] Plaintiff then filed an action in District Court, Case No. ED CV 03-851-CW, challenging the Commissioner's decision. On November 7, 2005, the Court remanded the matter for further proceedings. [AR at 359-72.] Pursuant to the Court's order, the Appeals Council remanded the case to the ALJ on April 22, 2006. [AR at 358.] A second administrative hearing was held on July 7, 2006, at which plaintiff appeared with counsel and two medical experts and a vocational expert testified. [AR at 373-99.] On February 13, 2007, the ALJ issued a second unfavorable decision, again finding plaintiff not disabled. [AR at 335-51.] Plaintiff then filed a second action in District Court, Case No. ED CV 07-532-PLA. On November 19, 2007, the Court approved the parties' stipulation for a voluntary remand of the action, and on March 31, 2008, the Appeals Council remanded the case for further proceedings. [AR at 449-57.] A third administrative hearing was held on January 20, 2009, at which plaintiff appeared with counsel and again testified on his own behalf. A vocational

---

[1]   The parties in the Joint Stipulation indicate that plaintiff filed his application on December 2, 2001. [Joint Stipulation ("JS") at 2.] According to the record, however, it appears that plaintiff filed his application on December 3, 2001. [See AR at 54-56, 92-94, 110.]

expert also testified.  [AR at 688-709.]  On March 9, 2009, the ALJ issued a third unfavorable decision, again finding plaintiff not disabled.  [AR at 418-37.]  This action followed.


### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.


### IV.

### EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/

/

/

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff did not engage in any substantial gainful activity during the period of time between September 17, 2001 (the alleged onset date of disability), and December 31, 2001 (the date the ALJ determined that plaintiff was last insured for

1   Disability Insurance Benefits purposes).  [AR at 423.]  At step two, the ALJ concluded that plaintiff

2   has the following severe impairments: "disorder of the liver, secondary to alcohol abuse; hiatal

3   hernias; hepatitis B and C with residuals; a history of substance abuse with subsequent anxiety

4   and reactive depression."  [AR at 423-24.]   At step three, the ALJ concluded that plaintiff's

5   impairments do not meet or equal any of the impairments in the Listing.  [AR at 424.]   The ALJ

6   further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform medium

7   work, with the following specifications: plaintiff "can occasionally lift and[/]or carry 50 pounds and

8   frequently 25 pounds; he can stand and/or walk six hours out of an eight-hour work day and sit

9   without limitation; he can occasionally stoop and bend; he can do non-public simple, routine,

10  repetitive tasks."  [AR at 425.]  At step four, the ALJ concluded that, through the date plaintiff was

11  last insured, he could perform his past relevant work as a laborer and cleaner.  [AR at 436.]

12  Accordingly, the ALJ found that plaintiff is not disabled.  [AR at 437.]


**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) comply with the Appeals Council's March 31, 2008, remand order; (2) consider the findings of Dr. Mi Ye Kim, plaintiff's treating physician; (3) consider the findings of Robert Simpson, plaintiff's therapist; (4) consider a physician's opinion dated July 3, 2008; (5) consider the findings of Dr. Gregory Nicholson, a consultative psychiatrist; (6) consider the state agency physician's findings; and (7) pose a complete hypothetical question to the vocational expert.  [See JS at 2-3.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

/

/

/

---

[2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  **A.   APPEALS COUNCIL'S REMAND ORDER**

2       Plaintiff contends that the ALJ failed to properly comply with the Appeals Council's March

3  31, 2008, remand order to reassess Kathryne Rupley's opinion that plaintiff cannot work due to

4  foot problems and determine if she was a physician when she gave that opinion.  [JS at 3-5; see

5  AR at 327, 452.]  Specifically, plaintiff contends that Dr. Rupley was plaintiff's treating physician

6  when she opined that plaintiff is disabled due to foot problems, and that the ALJ did not provide

7  specific and legitimate reasons supported by substantial evidence for rejecting her opinion.  [JS

8  at 3-5.]

9       In evaluating medical opinions, the case law and regulations distinguish among the opinions

10  of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

11  examine but do not treat the claimant (examining physicians); and (3) those who neither examine

12  nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,

13  416.902, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians

14  are given greater weight than those of other physicians, because treating physicians are employed

15  to cure and therefore have a greater opportunity to know and observe the claimant.  Orn v. Astrue,

16  495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  Despite

17  the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound

18  to accept the opinion of a treating physician.  However, the ALJ may only give less weight to a

19  treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and

20  legitimate reasons for discounting the opinion.  See Lester, 81 F.3d at 830-31 (the opinion of a

21  treating doctor, even if contradicted by another doctor, can only be rejected for specific and

22  legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495

23  F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes

24  substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations

25  omitted); Social Security Ruling[3] 96-2p (a finding that a treating physician's opinion is not entitled

26  ———————————————

27       [3]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
   Social Security Administration interpretations of the statute it administers and of its own
28                                                                                              (continued...)

6

1    to controlling weight does not mean that the opinion is rejected).  Similarly, "the Commissioner

2    must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an

3    examining physician."  Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th

4    Cir. 1990)).  Even where an examining physician's opinion is contradicted by another doctor, the

5    ALJ must still provide specific and legitimate reasons supported by substantial evidence to

6    properly reject it.  Id. at 830-31 (citing Andrews, 53 F.3d at 1043).

7            On January 6, 2003, Dr. Rupley diagnosed plaintiff with bilateral plantar fasciitis and pes

8    planovalgus foot type.   She also opined that plaintiff "is not able to work at this time due to the

9    disability" and that he "will need to seek activities that do not require prolonged standing."  [AR at

10   327.]  Dr. Rupley signed the medical record, in which she expressed this opinion, as "Kathryne

11   F Rupley[,] Resident."   In rejecting Dr. Rupley's January 6, 2003, opinion, the ALJ properly

12   complied with the Appeals Council's March 31, 2008, remand order.  The ALJ first acknowledged

13   that at the time of her January 6, 2003, opinion, Dr. Rupley was a doctor, or more specifically a

14   "podiatric intern who finished podiatrist school in 2001."  [AR at 434.]  The ALJ then provided

15   specific and legitimate reasons for rejecting Dr. Rupley's opinion that plaintiff was disabled due

16   to his foot problems.  [AR at 434-35.]  First, the ALJ properly rejected Dr. Rupley's opinion

17   because the objective or clinical medical evidence did not support a finding that plaintiff was

18   completely disabled by problems with his feet.  [AR at 434-35.]  An ALJ is not required to accept

19   a medical opinion that is inadequately supported by medical findings.  Batson v. Comm'r of Soc.

20   Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount treating physicians' opinions

21   that are conclusory, brief, unsupported by the record as a whole or by objective medical findings);

22   see Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may discount the conclusory

23   opinion of an examining or treating physician if the opinion is unsupported by clinical findings).

24   Here, the ALJ specifically noted that the x-rays of plaintiff's feet ordered by Dr. Rupley did not

25   support a complete disability finding because they showed only "*minor* abnormality," including

26   _____

27       [3](...continued)
28   regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
     Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   "*minimal* degenerative changes in the first metatarsal cuneiform joints bilaterally."  [AR at 429,

2   434-35, citing AR at 332 (foot x-ray report)] (emphasis added).  Next, the ALJ noted that Dr.

3   Rupley's opinion was inconsistent with the medical evidence as a whole.  [AR at 434-35.]

4   Specifically, the ALJ noted that plaintiff did not allege disabling foot pain and his medical records

5   do not show that he made significant complaints of foot pain to his doctors.  [Id.]  To the contrary,

6   the ALJ correctly noted that medical examinations reveal that plaintiff walks with a normal gait, has

7   no difficulty ambulating, and does not need an assistive device to walk.  [AR at 429-30, 434-35,

8   citing AR at 248-49, 649, 653.]  The inconsistency of Dr. Rupley's disability opinion with the

9   objective x-ray results and the medical evidence as a whole was a legitimate reason supported

10  by substantial evidence for the ALJ to discredit the doctor's opinion.  See 20 C.F.R. §§

11  404.1527(d)(4), 416.927(d)(4) (the more consistent an opinion is with the record as a whole, the

12  more weight it will be given); see also Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602-

13  03 (9th Cir. 1999) (a medical report's inconsistency with the overall record constitutes a legitimate

14  reason for discounting the opinion); Matney, 981 F.2d at 1020 (inconsistencies in a physician's

15  opinion represents a specific and legitimate reason for rejecting it); Weetman v. Sullivan, 877 F.2d

16  20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the

17  physician's own treatment notes).  Further, it is solely within the province of the ALJ to make

18  credibility findings and resolve the conflicts in the medical evidence.  See Andrews, 53 F.3d at

19  1041 (the ALJ is responsible for resolving conflicts in the evidence); see also Sample v.

20  Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Here, the ALJ properly rejected Dr. Rupley's

21  opinion as being inconsistent with the medical evidence.

22          Next, the ALJ discounted Dr. Rupley's opinion because she did not "have a longitudinal

23  history of treatment with" plaintiff, as she only saw plaintiff twice.  [AR at 435; see AR at 327

24  (January 6, 2003), 332 (June 12, 2002)].  An ALJ may properly consider the "[l]ength of the

25  treatment relationship and the frequency of examination" when considering the weight to accord

26  a medical opinion.  20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i).  The ALJ also discounted Dr.

27  Rupley's opinion because it was inconsistent with plaintiff's conservative treatment for his foot

28  impairment, and because the record indicates that plaintiff was not compliant with his treatment.

[AR at 435.]  Indeed, the record indicates that plaintiff was only prescribed orthotics for his foot problems, and that he admitted to medical providers that although he found them to be helpful, he only wore them occasionally.  [AR at 327.]  Plaintiff also refused injections in his heels.  [Id.] These were specific and legitimate reasons that were supported by the record for the ALJ to properly discount Dr. Rupley's opinion that plaintiff is disabled due to his foot condition.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment).  Since the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Rupley's opinion that plaintiff is disabled due to his foot condition, remand is not warranted on this issue.  Lester, 81 F.3d at 830-31.

**B.    DR. KIM'S OPINION**

Plaintiff contends that the ALJ did not provide "legally sufficient" reasons for rejecting the opinion of Dr. Mi Ye Kim, plaintiff's treating physician, dated August 1, 2006.  [JS at 9-11.]  In the opinion, Dr. Kim diagnosed plaintiff with hepatitis C, cirrhosis of the liver, and bipolar disorder; noted that he "gets fatigued easily," "has PTSD [post traumatic stress disorder] and sees [a] psychiatrist"; and opined that plaintiff is permanently disabled due to his impairments.  [AR at 481-82.]  In rejecting Dr. Kim's August 1, 2006, opinion that plaintiff is disabled, the ALJ noted that "[c]onsidering that the onset date would have to be prior to December 31, 2001, the disability statement is not consistent with a finding of disability in this case."  [AR at 435.]  The ALJ also asserted that he accorded more weight to the consultative psychiatric examiners' findings that plaintiff is not disabled by his mental impairments because Dr. Kim is "not a mental health expert." [AR at 435-36.]  In challenging the ALJ's rejection of Dr. Kim's August 1, 2006, opinion, plaintiff only addresses the ALJ's assertion that he accorded Dr. Kim's opinion less weight than the consultative psychiatrists because Dr. Kim is not a mental health specialist.  [JS at 10-11.]

Although it is improper for an ALJ to reject a treating physician's opinion solely on the basis that the physician is a general practitioner, not a psychiatrist (see Sprague v. Bowen, 812 F.2d

1226, 1232 (9th Cir. 1987)), here the ALJ provided a second, legitimate, reason for rejecting Dr. Kim's opinion.  Specifically, the Court concludes that the ALJ properly rejected Dr. Kim's August 1, 2006, opinion on the basis that it was dated years after December 31, 2001 (the date that plaintiff was last insured for Disability Insurance Benefits purposes), and was not consistent with the ALJ's properly supported disability determination.  When a Disability Insurance Benefits claimant's period of eligibility for disability benefits expires on a specific date, as was the case here, it is the claimant's burden to prove that he was either permanently disabled or subject to a condition that became so severe as to disable him on or prior to that date.  See Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).  Plaintiff has failed to meet his burden.

Dr. Kim's report was completed on August 1, 2006, more than four and one-half years after plaintiff's date last insured, and was not relevant to the period at issue in the instant application -- September 17, 2001 (plaintiff's alleged onset date) through December 31, 2001 (the date last insured).  See Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1461 & n.4 (9th Cir. 1995) (observing that a "long line of cases" has established that a claimant must establish disability as of the date last insured, and that "any deterioration in her condition subsequent to that time is, of course, irrelevant").  In the decision, the ALJ credited the findings of Dr. Linda Smith, a consultative psychiatric examiner who performed a mental status evaluation of plaintiff on January 18, 2002, which, as the ALJ noted, was the mental evaluation conducted "closest in time to [plaintiff's] date last insured of December 31, 2001." [AR at 433, 436.]  Based on her psychiatric evaluation [AR at 237-42], Dr. Smith opined that plaintiff is only "mildly impaired in his ability to interact appropriately with supervisors, co-workers, or the pubic due to some possible interference from depressed mood." [AR at 242.]  In all other respects, Dr. Smith opined that plaintiff had no work related mental functional limitations.  [Id.]  As Dr. Smith's opinion was based on her independent clinical examination, it constituted substantial evidence upon which the ALJ could properly rely in finding that plaintiff was not disabled prior to December 31, 2001.  See Tonapetyan v. Halter, 242 F.3d 1149, 1150 (9th Cir. 2001) (consultative examiner's opinion based on independent clinical findings constitutes substantial evidence).  As such, the ALJ properly rejected

1    Dr. Kim's August 1, 2006, opinion on the basis that it was outside the relevant time period and

2    inconsistent with the record evidence that plaintiff is not disabled by his mental or physical

3    impairments.[4]  Flaten, 44 F.3d at 1461 & n.4.  Accordingly, remand is not warranted on this issue.

4

5    **C.    MR. SIMPSON'S OPINION**

6         Plaintiff contends that the ALJ failed to properly consider the May 8, 2008, opinion of Robert

7    Simpson, a Licensed Marriage and Family Therapist who counseled plaintiff.  [JS at 15-16.]  On

8    May 8, 2008, Mr. Simpson opined that plaintiff "suffers with PTSD and with bipolar disorder[,] ...

9    is often depressed due to his multiple medical concerns and his limited ability to function[,] ... [and]

10   is totally and permanently disabled."  [AR at 624.]  Plaintiff acknowledges that because "Mr.

11   Simpson is not a physician or other 'acceptable' medical source" according to 20 C.F.R. §§

12   404.1513(a) and 416.913(a), the ALJ may properly "accord his opinion less weight tha[n] opinions

13   from an acceptable medical source."  [JS at 16.]  However, plaintiff contends that the ALJ erred

14   in disregarding Mr. Simpson's opinion as he gave no explanation for doing so.  [Id.]  The Court

15   disagrees with plaintiff and finds that the ALJ expressly provided specific and legitimate reasons

16   for rejecting Mr. Simpson's opinion.

17        According to the regulations, an ALJ must consider the opinions of "acceptable medical

18   sources," which include, among other professionals, licensed physicians and psychologists.  20

19   C.F.R. §§ 404.1513(a), 404.1527(a), (d), 416.913(a), 416.927(a), (d).  The regulations provide that

20   an ALJ may also consider opinion evidence regarding a claimant's condition from "other sources,"

21   including, among others, a claimant's therapist.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Although

22   an ALJ may give an acceptable medical source's opinion more weight than opinions from other

23   sources (see 20 C.F.R. §§ 404.1513, 416.913; Gomez v. Chater, 74 F.3d 967, 970-71 (9th

24

25        [4]    On August 12, 2002, Dr. Kim wrote a letter stating that plaintiff suffered from hepatitis C,
     alcohol related liver disease, bipolar disorder, and PTSD.  In the letter, Dr. Kim opined that plaintiff

26   was "totally and permanently disabled" and would likely be unable "to participate in the work force
     in the future."  [AR at 265.]  Although plaintiff does not contest the ALJ's rejection of Dr. Kim's

27   August 12, 2002, opinion, the Court notes that the ALJ provided specific and legitimate reasons
     supported by substantial evidence for rejecting that opinion as well, as outlined by defendant in

28   the Joint Stipulation.  [AR at 429-30; JS at 11-15.]

Cir.1996)), the ALJ may not completely disregard opinions from "other sources" just because they are not "acceptable medical sources."  See Sprague, 812 F.2d at 1232 (ALJ is required to "consider observations by non-[acceptable] medical sources as to how an impairment affects a claimant's ability to work").  According to SSR 06-3p, an ALJ must consider the opinion of a medical source who is not, according to the regulations, an "acceptable medical source" -- e.g., a therapist -- by considering, among other factors, "how frequently the source has seen the individual," "[h]ow consistent the opinion is with other evidence," and "[w]hether the source has a specialty or area of expertise related to the individual's impairment(s)."  See SSR 06-3p at *4-5 (available at 2006 WL 2329939) (listing factors that must be considered); see id. at *3 ("[M]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").

Contrary to plaintiff's assertion, the ALJ in the decision provided sufficient reasons for rejecting Mr. Simpson's opinion regarding plaintiff's limitations.  First, in addition to noting that Mr. Simpson was plaintiff's counselor, not an acceptable medical source, the ALJ rejected Mr. Simpson's opinion because his findings were inconsistent with the overall medical record.  [AR at 436.]  The ALJ also asserted that he gave more weight to the consultative psychiatrists' opinions that plaintiff is not disabled by his mental impairments (including Dr. Smith's opinion discussed above and Dr. Gregory Nicholson's opinion discussed below) than to Mr. Simpson's contrary opinion.  [Id.]  An ALJ is permitted to accord more weight to consultative physicians than to contradictory opinions from non-acceptable medical sources.  Gomez, 74 F.3d at 970-71.  On this basis alone, the ALJ properly rejected Mr. Simpson's opinion that plaintiff is disabled.

Furthermore, the ALJ also noted that plaintiff "has long treatment gaps and that the counseling [plaintiff] receives [from Mr. Simpson] has been related to relationships and not regarding actual mental health conditions." [AR at 436.] The infrequency of therapeutic treatment,

1  the inconsistency of Mr. Simpson's opinion with the medical evidence, and Mr. Simpson's lack of

2  specialization relevant to plaintiff's alleged mental impairments of depression and PTSD were all

3  adequate factors, according to SSR 06-3p, for the ALJ to base his rejection of Mr. Simpson's

4  opinion.  See SSR 06-3p at *4-5.  As such, the ALJ provided sufficient reasons for rejecting Mr.

5  Simpson's findings.  Remand is not warranted on this issue.

6

7  **D.   DR. NICHOLSON'S OPINION**

8       Plaintiff argues that the ALJ did not properly consider the Comprehensive Psychiatric

9  Evaluation prepared by Dr. Gregory Nicholson, a consultative psychiatrist, dated May 16, 2008.

10  [JS at 23.]  In the evaluation, Dr. Nicholson diagnosed plaintiff with PTSD, bipolar disorder, and

11  as having a Global Assessment of Functioning ("GAF") score of 50.[5]  [AR at 485-91.]  He also

12  opined that plaintiff is able to understand, remember, and carry out simple instructions; can do

13  detailed instructions; can accept instructions from supervisors without limitation; and is mildly

14  limited in his ability to maintain concentration, attention, persistence, and pace.  Dr. Nicholson

15  further opined that plaintiff is moderately limited in his abilities to relate and interact with co-

16  workers and the public; associate with day-to-day work activity, including attendance and safety;

17  and maintain regular attendance and perform work activities on a consistent basis.  [AR at 490.]

18  In the decision, the ALJ summarized Dr. Nicholson's opinion concerning plaintiff's functional

19  limitations, and asserted that he gave great weight to this opinion because the findings "are

20  consistent with the objective evidence and [plaintiff's] treatment history."  [AR at 433-34, 436.]  In

21  challenging the ALJ's consideration of Dr. Nicholson's evaluation, plaintiff focuses on the ALJ's

22  failure to expressly address the diagnoses and GAF score represented in the evaluation.

23  Specifically, plaintiff contends that Dr. Nicholson's diagnosis of PTSD and bipolar disorder,

24  _____

25     [5]   A Global Assessment of Functioning score is the clinician's judgment of the individual's

26  overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental

27  limitations.  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000).  A GAF score in the range of 41-50 indicates serious symptoms or any serious impairment

28  in social, occupational, or school functioning (e.g., unable to keep a job).  DSM-IV at 34.

1   coupled with his finding that plaintiff has a GAF score of 50, "have significant ramifications for ...

2   plaintiff's vocational base." [JS at 23.]  Plaintiff argues that the ALJ failed to properly address Dr.

3   Nicholson's evaluation because "the ALJ merely summarized these findings and failed to

4   specifically explain whether he accepted or rejected them and ... what weight, if any, was given

5   to them." [Id.]

6        Contrary to plaintiff's assertion, the ALJ was not obligated to discuss every part of Dr.

7   Nicholson's assessment.  "[I]n interpreting the evidence and developing the record, the ALJ does

8   not need to discuss every piece of evidence."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006,

9   1012 (9th Cir. 2003) (quotation and citations omitted).  Rather, the ALJ was only obligated to

10  "explain why 'significant probative evidence [was] rejected.'"  Vincent v. Heckler, 739 F.2d 1393,

11  1394-95 (9th Cir. 1984) (quoting Cotter v. Harris, 642 F.2d 700, 706 (3rd Cir. 1981)).  Although

12  the ALJ did not expressly state the weight he afforded the diagnoses and GAF score, there is no

13  indication that he ignored or rejected these portions of Dr. Nicholson's evaluation.  Because the

14  ALJ did not reject Dr. Nicholson's opinion, he was not required to expressly address all parts of

15  his evaluation.  See id.

16       Further, Dr. Nicholson's diagnosis that plaintiff suffers from PTSD and depression does not,

17  by itself, prove disability because it does not establish the existence of any significant limitations.

18  See Beecher v. Heckler, 756 F.2d 693, 695 n.2 (9th Cir. 1985) (there was no inconsistency

19  between the ALJ's finding of a post-traumatic neurosis based in part on hypochondria and his

20  rejection of the plaintiff's subjective complaints of disabling pain); see also Matthews v. Shalala,

21  10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a

22  disability"); see Sample, 694 F.2d at 642 ("The existence of emotional disorder ... is not per se

23  disabling.").  Moreover, GAF scores are not dispositive in Social Security cases, and thus the

24  ALJ's failure to explicitly address the weight he afforded the GAF score does not warrant remand.

25  In fact, the Social Security Administration has declined to endorse the GAF scale for "use in the

26  Social Security and SSI disability programs," and has indicated that GAF scores have no "direct

27  correlation to the severity requirements in [the] mental disorders listings."  See Revised Medical

28  Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746-01,

14

1   at *50764-65 (Aug. 21, 2000).  Although "the GAF is a test used by mental health practitioners

2   with respect to planning treatment and tracking the clinical progress of an individual in global

3   terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable

4   evidence." Alvarez v. Barnhart, 2002 WL 31466411, at *8 (W.D. Tex. Oct. 2, 2002).  Nor is a GAF

5   score determinative of an individual's RFC assessment. Id. ("A GAF score is not a rating typically

6   relied upon with respect to assessing an individual's RFC under the Act."); see also Howard v.

7   Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) (GAF score is not essential in assessing

8   RFC).  Remand is not warranted on this issue.

9

10  **E.      PHYSICIAN'S OPINION DATED JULY 3, 2008**

11          Plaintiff contends that the ALJ improperly rejected a document entitled "Medical Opinion

12  Re: Ability to Do Work-Related Activities (Physical)," which plaintiff contends was the opinion of

13  one of his treating physicians.  [JS at 18.]  The opinion provides that plaintiff can lift ten pounds

14  occasionally and less than ten pounds frequently; can stand and walk for approximately two hours

15  in an eight-hour workday; must periodically alternate from sitting, standing, and walking every 30

16  minutes and must walk around ever 90 minutes for 15 minutes at a time; will sometimes need to

17  lie down at unpredictable intervals during the workday; cannot stoop or crouch; can twist and climb

18  stairs and ladders only occasionally; is limited in his ability to reach, handle, finger, and feel; and

19  must avoid even moderate exposure to extreme cold or heat, noise, and hazards.  The opinion

20  also provides that plaintiff would be absent from work more than three times a month due to his

21  impairments.  [AR at 628-30.]  In the decision, the ALJ provided this opinion "with an unknown

22  signature ... little weight."  [AR at 435.]  Specifically, the ALJ reasoned that although the opinion's

23  author based his or her assessment of plaintiff's limitations on plaintiff's degenerative joint disease

24  and end stage liver disease [see AR at 629-30], the treatment notes accompanying the opinion

25  and plaintiff's overall medical record (including x-rays and clinical findings) do not support the

26  extent of the limitations provided in the July 3, 2008, assessment.  [AR at 435.]  The ALJ also

27  noted that although the record indicates that plaintiff uses a cane "on some occasions," Dr. Gabriel

28

1    T. Fabella observed that plaintiff had a stable gait when he was not using a cane.  [AR at 435; see

2    AR at 649, 653.]

3          Plaintiff argues that the ALJ misrepresented the medical evidence, particularly in finding

4    that no x-rays support the July 3, 2008, opinion.  [JS at 19.]  Plaintiff relies on the February 14,

5    2003, x-ray of plaintiff's feet ordered by Dr. Rupley that showed "[b]ilateral PES plan[us]" and

6    "[m]inimal degenerative changes of the first metatarsal cuneiform joints, bilaterally."  [JS at 19,

7    quoting AR at 332.]  Plaintiff contends that this x-ray supported the July 3, 2008, treating

8    physician's opinion, and thus the ALJ failed to provide adequate reasons for rejecting the opinion.

9          Even assuming that the July 3, 2008, opinion was authored by one of plaintiff's treating

10   physicians,[6] the ALJ provided explicit and legitimate reasons supported by substantial evidence

11   for discounting it -- namely, that the opinion was unsupported by and inconsistent with the medical

12   evidence.  Lester, 81 F.3d at 830-31.  The ALJ was not required to accept the opinion if he

13   properly determined that it was inadequately supported by medical findings.  Batson, 359 F.3d at

14   1195; Matney, 981 F.2d at 1019.  For the reasons discussed supra, the ALJ provided adequate

15   reasons for finding that the 2003 x-ray results did not support a disability finding in this case.  [AR

16   at 429, 434-35, citing AR at 332 (x-ray report).]  In finding that the medical evidence did not

17   support the extent of the functional limitations assessed in the July 3, 2008, opinion, the ALJ also

18   cited the treatment notes of Dr. Andrew H. Guo, dated June 23, 2008.  [AR at 435, citing 636.]

19   Specifically, Dr. Guo stated that plaintiff "appears to have nonspecific generalized tenderness in

20   the upper lumbar back as well as generalized pain on movement in the knees and shoulders."  [AR

21   at 636.]  However, Dr. Guo also noted that "[t]here are no previous imaging tests of these areas

22   to eval[uate] for progression of [degenerative joint disease]."  [Id.]  Dr. Guo also reported that

23   plaintiff had full range of motion of his elbows, shoulders, and upper back, with tenderness on his

24   elbows, shoulders, patellar borders, spine, and quadraceps.  [AR at 635.]  The lack of objective

25

26          6   A handwritten notation on the form reads "Dr. Kim."  [AR at 628.]  Neither plaintiff nor
27   defendant argue that the form was authored by Dr. Kim.  [See JS at 18-23.]  However, it appears
     to the Court that the signature of Dr. Kim on the August 1, 2006, medical report matches the
28   signature on the July 3, 2008, report.  [Compare AR at 481, with AR at 630.]

1    medical evidence supporting the disabling limitations provided in the July 3, 2008, medical opinion,

2    was a legitimate basis for the ALJ to discount the opinion.  Batson, 359 F.3d at 1195.

3        Moreover, the ALJ's conclusion that the July 2008 opinion is inconsistent with the medical

4    evidence overall is supported by the record, and thus was also a legitimate basis for affording the

5    opinion little weight. [AR at 495.] See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4); Morgan, 169 F.3d

6    at 602-03; Matney, 981 F.2d at 1020.  In the decision, the ALJ gave great weight to Dr. Fabella's

7    opinion, based on his examination of plaintiff, that plaintiff can stand or walk for six hours, with normal

8    breaks, in an eight-hour workday; lift 50 pounds occasionally and 25 pounds frequently; occasionally

9    stoop or bend; and sit without limitation. [AR at 430, 653.] The ALJ also credited the findings of Dr.

10   Adi Klein, another consultative examining physician, who examined plaintiff on February 9, 2002.

11   [AR at 430; see AR at 245-50.] Based on his examination, Dr. Klein reported that plaintiff "has no

12   restrictions based on objective evidence," but that he has "workplace limitations on hepatotoxic

13   chemicals secondary to liver disease." [AR at 249.] Significantly, both Dr. Klein and Dr. Fabella

14   observed that plaintiff has normal range of motion in his upper and lower extremities, and that he has

15   normal gait without an assistive device. [AR at 248-49, 649, 652-53.] It is solely within the province

16   of the ALJ to make credibility findings and resolve the conflicts in the medical evidence.  See

17   Andrews, 53 F.3d at 1041 (the ALJ is responsible for resolving conflicts in the evidence); see also

18   Sample, 694 F.2d at 642 ("Where ... medical reports are inconclusive, 'questions of credibility and

19   resolution of conflicts in the testimony are functions solely of the Secretary.'") (quoting Waters v.

20   Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971)); Matney, 981 F.2d at 1019.  As Dr. Fabella's and

21   Dr. Klein's assessments were based on their own clinical evaluations, their opinions that plaintiff

22   is not disabled by his impairments constituted credible evidence, and it was proper for the ALJ to

23   rely on their assessments rather than the contradictory opinion represented in the July 2008

24   report. See Orn, 495 F.3d at 632 (an examining physician's opinion based on independent clinical

25   findings that differ from the findings of a treating physician may constitute substantial evidence);

26   see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (an examining physician's opinion

27   based on independent clinical findings can constitute substantial evidence).  Accordingly, the Court

28   may not second-guess the ALJ's resolution of the conflicting medical opinions in affording the July

2008 opinion little weight.  Allen v. Heckler, 749 F.2d 577, 579-80 (9th Cir. 1984) (if the evidence supports more than one rational interpretation, the reviewing court must uphold the ALJ's decision and not second-guess the ALJ's choice among conflicting opinions).  As such, remand is not warranted on this issue.

**F.   STATE AGENCY FINDINGS**

Plaintiff contends that the ALJ failed to properly consider the findings of Dr. H. M. Skopec, one of the State Agency physicians, represented in his May 30, 2008, Mental Residual Functional Capacity Assessment ("MRFCA").  [JS at 26-28; see AR at 603-05.]  Specifically, plaintiff highlights the "Summary Conclusions" section of the MRFCA, which indicates that plaintiff is moderately limited in his abilities to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with others without being distracted by them; and get along with coworkers and peers without exhibiting behavioral extremes.  Plaintiff also highlights Dr. Skopec's opinion that plaintiff has marked limitations in his ability to interact appropriately with the general public.  [JS at 26; see AR at 603-04.]  Plaintiff argues that "the ALJ failed to discuss or even mention [these findings] anywhere in his decision" and that the ALJ failed to provide legally sufficient reasons for rejecting these findings.  [AR at 26-28.]  Plaintiff's contention lacks merit.

In addition to Dr. Skopec's findings highlighted by plaintiff and summarized above, Dr. Skopec also completed the final section of the MRFCA entitled "Functional Capacity Assessment," in which the form instructed him to explain his conclusions concerning plaintiff's functional limitations in a "narrative form."  [AR at 605.]  In this section, Dr. Skopec opined that plaintiff "can sustain simple repetitive tasks with adequate pace and persistence, can adapt and relate to co-workers and supervisors but likely cannot work with the public."  [Id.]  The part of the ALJ's RFC determination concerning plaintiff's mental limitations -- i.e., that "he can do non-public simple, routine, repetitive tasks" -- effectively incorporated Dr. Skopec's narrative description of plaintiff's limitations.  [AR at 425.]  As the ALJ implicitly credited Dr. Skopec's opinion concerning plaintiff's

mental limitations, it was not error for the ALJ to fail to explicitly discuss Dr. Skopec's findings or the weight that he afforded them.  See Vincent, 739 F.2d at 1394-95; see also Seymore v. Apfel, 131 F.3d 152, 1997 WL 755386, at *1 (10th Cir. 1997) (citable for its persuasive value pursuant to Tenth Circuit Rule 32.1) (finding no reversible error where the ALJ did not specifically mention a nonexamining state agency doctor's opinion that was consistent with the ALJ's written decision).

## G.    VOCATIONAL EXPERT TESTIMONY

Lastly, plaintiff argues that the hypothetical question posed to the vocational expert did not include all of plaintiff's limitations.  [JS at 29.]

The determination at step four that a claimant can return to his past relevant work need not be supported by vocational expert testimony.  See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see also Matthews, 10 F.3d at 681 (finding that "since [the claimant] failed to show that he was unable to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the claimant]" and "[t]he vocational expert's testimony was thus useful, but not required").  Here, the ALJ relied on vocational expert testimony in concluding that plaintiff could return to his past relevant work.  [AR at 436-37.]  Although the vocational expert's testimony was not required, plaintiff alleges that the ALJ's hypothetical question posed to the vocational expert improperly excluded the restrictions set forth in the July 2008 medical opinion and in Dr. Skopec's MRFCA.  [AR at 30.]

To constitute substantial evidence upon which an ALJ may properly rely in reaching a disability determination, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'"  Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  "An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."  Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001). However, the hypothetical need not include limitations that the ALJ properly determines are not supported by substantial evidence (id. at 1163-64) because "[t]he vocational expert's opinion about

a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record." Magallanes, 881 F.2d at 756 (citing Embrey, 849 F.2d at 422).

Here, since the ALJ properly rejected the July 2008 medical opinion, it was not necessary for the ALJ to obtain testimony from the vocational expert regarding whether the limitations set forth in that opinion would impact plaintiff's ability to work. See Osenbrock, 240 F.3d at 1163-64; see also Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995) (upholding ALJ's hypothetical question to a vocational expert that excluded alleged limitations properly rejected by the ALJ). Further, as explained above, the ALJ's RFC determination effectively incorporated Dr. Skopec's assessment of plaintiff's functional limitations -- i.e., that plaintiff is able to do simple, routine, repetitive tasks but that he cannot work with the public.  [AR at 425, 605.]  At the January 20, 2009, administrative hearing, the ALJ asked the vocational expert whether a person with an RFC to do medium work and with a limitation "that the work should involve only simple, routine, repetitive, non public tasks" could perform plaintiff's past work.  [AR at 706-07.]   As the hypothetical question posed to the vocational expert mirrored the ALJ's RFC determination [see 425], which was based on medical assumptions properly supported by the evidence (including Dr. Skopec's assessment), the question was not incomplete.   Osenbrock, 240 F.3d at 1163. Accordingly, the vocational expert's testimony constituted substantial evidence upon which the ALJ could determine that plaintiff was able to perform his past relevant work.  Remand is not warranted on this issue.

/

/

/

/

/

/

/

/

**VI.**

**CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: May 14, 2010

_____

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE